

AL: USAO#2024R00290
hmg.1.13.26

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | Criminal No. ꓕꓭA 26cr 33 |
| | * | |
| v. | * | (Conspiracy to Commit Wire Fraud, 18 |
| | * | U.S.C. § 1349; Wire Fraud, 18 U.S.C. |
| ██████████████ | * | § 1343; Conspiracy to Launder |
| | * | Monetary Instruments, 18 U.S.C. § |
| | * | 1956(h); Forfeiture, 18 U.S.C. |
| **ALI HABOU MAMAN,** | * | §§ 981(a)(1)(C) and 982(a)(1) and (b)(1), |
| | * | 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |
| **Defendants.** | * | |
| | * | **UNDER SEAL** |
| | * | |

### INDICTMENT

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

The Grand Jury for the District of Maryland charges that:

At all times material to this Indictment:

### Introduction

██████████████████████████████████████

2.      **ALI HABOU MAMAN ("MAMAN")** was a citizen of Niger and resided in Frederick, Maryland.

3.      The individuals with the initials W.A., P.B., S.D., G.G., K.F., C.W., and C.F. were real persons living in California, Tennessee, Tennessee, Washington, Kansas, Florida, and Georgia, respectively.

4.      JPMorgan Chase ("Chase"), Navy Federal Credit Union ("NFCU"), M&T Bank ("M&T"), CitiBank, Capital One, TD Bank ("TD"), Bank of America ("BOA"), Truist Bank

("Truist"), Farmers and Merchants Trust Company of Chambersburg ("F&M"), and Citizens Bank ("Citizens") were financial institutions as defined in 18 U.S.C. § 20.

## Relevant Terms

5. A "romance scheme" is typically operated by using false online personas to befriend victims online. The perpetrator attempts to develop a romantic relationship online with the victim, and eventually suggests an urgent financial need, such as a legal problem, serious illness, or need for money to travel, and pressures the victim to provide assistance. There is usually a promise of return of money or a future in-person relationship.

6. An "investment scheme" typically starts on social media, a dating app, or through an unexpected e-mail, text message, or phone call. The perpetrator pitches an investment opportunity through language promising that the victim will "make lots of money" with "little to no risk," or similar such language. Victims are usually asked by perpetrators to send "fees"—or language to that effect—to facilitate the purported investment, which may be overseas, and the victims in reality will thereafter receive nothing in return.

7. These schemes and other similar schemes are often operated from outside of the United States and target older adults. In order to avoid suspicion of the victims and their banks, the perpetrators need to be able to provide United States bank accounts to victims to help convince the victims that the request is legitimate and to avoid triggering fraud detection mechanisms at the bank.

## The Scheme and Artifice to Defraud

8. From in or about October 2022 and continuing through the date of this Indictment, in the District of Maryland and elsewhere, the defendants,

2

██████████████████████████ and

**ALI HABOU MAMAN,**

did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343 (hereinafter, "the scheme to defraud").

### The Conspiracy to Execute the Scheme to Defraud

9.      From in or about October 2022 and continuing through the date of this Indictment, in the District of Maryland and elsewhere, the defendants,

██████████████████████████ and

**ALI HABOU MAMAN,**

did knowingly and willfully conspire, combine, confederate, and agree with each other, and with other persons known and unknown to the Grand Jury ("conspirators"), to commit wire fraud, that is, to knowingly execute and attempt to execute the scheme to defraud, by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343 (hereinafter, "the conspiracy to defraud").

### Objects of the Conspiracy and Scheme to Defraud

10.      It was an object of the conspiracy and scheme to defraud for **MAMAN** and ████████ to personally enrich themselves by fraudulently obtaining and attempting to obtain money and property from victims for their own personal use and benefit, and for the personal use and benefit of their conspirators by means of romance, investment, and other schemes.

3

## Manner and Means

The manner and means used to accomplish the objectives of the conspiracy and scheme to defraud included, among others, the following:

11.    It was part of the conspiracy and scheme to defraud that ███████ and MAMAN exchanged messages via WhatsApp about creating accounts with U.S. banks that could be used to receive funds from victims of the fraudulent schemes.

12.    It was further part of the conspiracy and scheme to defraud that on or about January 5, 2023, **MAMAN** filed Articles of Organization with the Maryland State Department of Assessments & Taxation for DDK Logistics LLC ("DDK"). In the Articles of Organization, **MAMAN** identified himself as the only Authorized Person and Resident Agent for DDK, and he identified his home address in Frederick, Maryland as DDK's business address.

13.    It was further part of the conspiracy and scheme to defraud that **MAMAN** opened the bank accounts listed below in the name of DDK, and on which **MAMAN** was the only signatory:

a.    a bank account ending in -5392 at Chase ("Chase 5392");

b.    a bank account ending in -8172 at Chase ("Chase 8172");

c.    a bank account ending in -8830 at Chase ("Chase 8830");

d.    a bank account ending in -3774 at NFCU ("NFCU 3774");

e.    a bank account ending in -8797 at M&T ("M&T 8797");

f.    a bank account ending in -0946 at CitiBank ("CitiBank 0946");

g.    a bank account ending in -2062 at Capital One ("Capital One 2062");

h.    a bank account ending in -3727 at TD ("TD 3727");

4

     i.   a bank account ending in -4733 at BOA ("BOA 4766");

     j.   a bank account ending in -3585 at Truist ("Truist 3585");

     k.   a bank account ending in -1013 at Truist ("Truist 1013");

     l.   a bank account ending in -9112 at F&M ("F&M 9112"); and

     m.  a bank account ending in -7587 at Citizens ("Citizens 7587")

(collectively, the "DDK Accounts").

14. It was further part of the conspiracy and scheme to defraud that for each of the DDK Accounts, **MAMAN** identified himself as the owner or Chief Executive Officer of DDK with a 100% beneficial ownership interest in DDK. For each of the DDK Accounts, **MAMAN** provided his personal residential address as DDK's business address. And to the extent that any financial institution asked **MAMAN** to identify the nature of DDK's business when opening one of the DDK Accounts, **MAMAN** stated that DDK was involved in providing computer chips for vehicles and trading automotive parts generally.

15. It was further part of the conspiracy and scheme to defraud that DDK did not have any significant physical operations, engage in legitimate business activities, earn gross revenues, incur cost of goods sold, incur administrative expenses associated with business operations, report wages for employees to the State of Maryland, and have significant numbers of employees.

16. It was further part of the conspiracy and scheme to defraud that ███████ **MAMAN**, and others used the DDK Accounts to receive funds from the victims of the scheme to defraud and then transfer those funds to other third parties.

17.    It was further part of the conspiracy and scheme to defraud that **MAMAN** communicated bank account information to ███████ and other conspirators by various means, including communications via WhatsApp, resulting in interstate and foreign wire communications.

18.    It was further part of the conspiracy and scheme to defraud that victims were contacted online, by e-mail, over the phone, and by other messaging applications with the intent to fraudulently induce the victims to provide money and property.

19.    It was further part of the conspiracy and scheme to defraud that conspirators assumed fictitious identities, posed as a love interest, and developed what the victims believed was a romantic relationship with the victims.

20.    It was further part of the conspiracy and scheme to defraud that victims were falsely told by their alleged romantic partners that the partners had suffered various crises and required urgent financial assistance.

21.    It was further part of the conspiracy and scheme to defraud that conspirators used other ruses, such as false investment and business opportunities, to fraudulently obtain and attempt to obtain funds from victims.

22.    It was further part of the conspiracy and scheme to defraud that ███████ **MAMAN**, and other conspirators created false and fictitious documents, websites, and other records to support the claims conspirators made to their victims.

23.    It was further part of the conspiracy and scheme to defraud that victims were directed to send—and did in fact send—money to **MAMAN** via the DDK Accounts, including by personal check, cashier's check, and wire transfer.

6

24.    It was further part of the conspiracy that the real persons with the initials W.A., P.B., S.D., G.G., K.F., C.W., and C.F. were fraudulently induced to send money to DDK Accounts.

25.    It was further part of the conspiracy and scheme to defraud that more than 70 victims collectively sent more than $5 million to **MAMAN**, ████████ and other conspirators based on false and fraudulent pretenses, representations, and promises involving romance and investment schemes.

18 U.S.C. § 1349

## COUNTS TWO THROUGH FOUR
(Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 8, and 11 through 25 of Count One of this Indictment are incorporated herein by reference.

2.      On or about the dates set forth below, in the District of Maryland and elsewhere, the defendants,

▮▮▮▮▮▮▮▮▮▮▮▮▮ and
**ALI HABOU MAMAN,**

having devised and intending to devise the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate commerce the writings, signs, signals, pictures, and sounds described below for the purpose of executing such scheme and artifice to defraud as follows:

| Count | Date | Description | Interstate Wire |
|-------|------|-------------|-----------------|
| 2 | 9/28/2023 | $130,000 Wilson Bank & Trust cashier's check from P.B. deposited to Chase 5392 | From Maryland to a location outside of Maryland |
| 3 | 11/28/2023 | $41,850 Sound Credit Union cashier's check from G.G. deposited to NFCU 3774 | From Maryland to a location outside of Maryland |
| 4 | 12/29/2023 | $83,000 personal check drawn on Andover State Bank from K.F. deposited to NFCU 3774 | From Maryland to a location outside of Maryland |

18 U.S.C. § 1343

## COUNT FIVE
(Conspiracy to Launder Monetary Instruments)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 8 and 11 through 25 of Count One of this Indictment are incorporated herein by reference.

## THE CONSPIRACY

2.      Beginning in or around October 2022 and continuing through the date of this Indictment, in the District of Maryland and elsewhere, the defendants,

███████████████████ **and**

**ALI HABOU MAMAN,**

did knowingly combine, conspire, and agree with each other and with persons known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

a.      to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to commit wire fraud and wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

b.      to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, a conspiracy to commit wire fraud and wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343,

9

from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## MANNER AND MEANS

The manner and means used to accomplish the objectives of the money laundering included those described in paragraphs 11 through 25 of Count One as well as the following, among others:

3.      It was part of the conspiracy to launder monetary instruments that **MAMAN** registered DDK as a business in Maryland and opened the DDK Accounts for the purposes of receiving and laundering the proceeds of the scheme to defraud.

4.      It was further part of the conspiracy to launder monetary instruments that **MAMAN** communicated information about laundering transactions to ███████ and other conspirators by various means, including communications via WhatsApp.

5.      It was further part of the conspiracy to launder monetary instruments that after using the DDK Accounts to receive fraudulently obtained funds from victims, **MAMAN** made outgoing wire transfers from the DDK Accounts directed to bank accounts for third parties located in several different countries, including but not limited to the United States, China, India, and Indonesia.

6.      It was further part of the conspiracy to launder monetary instruments that in conducting the outgoing wire transfers from the DDK Accounts, **MAMAN** retained a portion of

10

the funds as a fee and caused ███████ and other persons to receive a portion of the fraudulently obtained funds.

7.    It was further part of the conspiracy to launder monetary instruments that between September 18, 2023, and October 16, 2023, **MAMAN** received more than $450,000 in funds from different victims of the scheme to defraud into Chase 5392, including funds received from P.B. and W.A.

8.    It was further part of the conspiracy to launder monetary instruments that **MAMAN** initiated and caused the initiation of financial transactions involving wire fraud proceeds to bank accounts located in the United States and outside the United States, including the following:

(1) a wire transfer of approximately $178,403.19, on or about September 28, 2023 to a bank account in China that referenced "Home Decoration/Bnf/Home Decoration";

(2) a wire transfer of approximately $77,455.50 on or about December 29, 2023 to a bank account in China that referenced "buying goods";

(3) a wire transfer of approximately $18,450.10 on or about February 8, 2024 to a bank account in China that referenced "home decoration"; and

(4) approximately three wire transfers totaling approximately $92,343 on February 14, 2024 and February 15, 2024 to bank accounts located in the United States and China that referenced "health products" and "home decoration."

9.    It was further part of the conspiracy to launder monetary instruments that on or about October 24, 2023, **MAMAN** exchanged WhatsApp messages with ███████ regarding financial transactions involving wire fraud proceeds.

18 U.S.C. § 1956(h)

11

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and (b)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendants' convictions under Counts One through Five of this Indictment.

### Wire Fraud Forfeiture

2.      Upon conviction of the offenses alleged in Counts One through Four of this Indictment, the defendants,

████████████████████████ **and**
**ALI HABOU MAMAN,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

### Money Laundering Forfeiture

3.      Upon conviction of the offense alleged in Count Five of this Indictment, the defendants,

████████████████████████ **and**
**ALI HABOU MAMAN,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

### Property Subject to Forfeiture

4.      The property to be forfeited includes, but is not limited to:

a.     a forfeiture money judgment equal to the amount of proceeds each defendant obtained as a result of the conduct alleged in Counts One through Four; and

b.     a forfeiture money judgment in the amount of the value of any property, real or personal, involved in Count Five.

### Substitute Assets

5.     If, as a result of any act or omission of the defendant(s), any of the property described above as being subject to forfeiture:

     a.     cannot be located upon the exercise of due diligence;

     b.     has been transferred or sold to, or deposited with, a third person;

     c.     has been placed beyond the jurisdiction of the Court;

     d.     has been substantially diminished in value; or

     e.     has been commingled with other property which cannot be divided

     without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C § 982(b)(1) and 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. §§ 982(a)(1), 982(b)(1)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

_Kelly O Hayes / APL_
Kelly O. Hayes
United States Attorney

A TRUE BILL:

███████████████████

Foreperson

Date:   1/22/2026

13